So I will say that you don't need to repeat arguments related to Weyer unless they're different, because we're well aware of the issue on the Title III. Yes, Your Honor. May it please the Court, Jack Fitzgerald on behalf of Appellant Donald Cullen. And I would like to address Weyer, but we do have a different take and different arguments on it than were presented. I think that Cullen prevails in this appeal, including as against Weyer, under a three-step analysis. First, the statute is either ambiguous or it leaves a gap for the agency to fill, as required under Chevron. Second, the DOJ's interpretation, at least one of the interpretations we've talked about in the briefing, is entitled to Chevron deference, meaning it meets the standards set forth in U.S. v. Meade and its progeny. And third, under Brand X, that interpretation trumps Weyer, because Weyer did not find – did not construe the statute and say that it was an unambiguous statute, and this is the plain meaning. Weyer rather resorted to a canon of construction, a nocitor associus – I hope I'm pronouncing that right – that is used to resolve actually ambiguous or unclear language. So on the first point, I think this actually – whether the statute is ambiguous. I think this actually is one of the major disagreements in the briefing and maybe one of the points to crystallize here. But there's at least three points that show that it's ambiguous. First, in the DOJ's rulemaking in 2010, it noted that clarification was needed or at least noted comments that it received that clarification was needed because of the current ambiguity caused by court decisions as to whether web-only businesses are covered under Title III, and that's 75 Federal Register 43464. Second, there indeed is a circuit split. We've got four circuits on either side of the aisle in different strengths. So, for example, there's – But a circuit split isn't enough for us to depart from Weyer as a panel, is it? No. The argument is that the circuit split indicates that there's ambiguity in the statute. That's the only argument I'm making, not that the circuit split overrules Weyer. So there's ambiguity. Let's assume there's ambiguity in the statute. Where is the statement that deserves Chevron deference? Okay. The statement that deserves Chevron deference is 28 CFR, Section 36, Appendix A. And the statement that – What statement in there? It's the statement that – it's actually quite a – there's quite a long paragraph on it, and I won't read the whole thing, but it's in our addendum at pages 40 to 41, and there's a comment on website accessibility, and it talks about how the DOJ has consistently interpreted this over time. But not in any regulation to which we owe Chevron deference, right? That's true. They've interpreted it this way, but in briefs and other things that under Mead we wouldn't give deference to. That's true. Not until the DOJ put it in this regulation. And granted, this is an appendix, and it's sort of commentary on the rules and principle. But I'd point the Court to its decision in Gillstrap v. United Airlines, where the question was whether a woman who had repaired knees had to be given a wheelchair in an airport terminal to – and she had sued United Airlines. And the Court found that in that case, the statute wasn't ambiguous because there was a regulation or there was a specific exception for airline carriers at airport terminals. So it said it wasn't ambiguous. The plain language is clear, and we decide that Title III doesn't cover it. But it said – but our interpretation is confirmed by regulation, and it referred to the DOJ's comments in an appendix to the same thing. So – Right. But that really goes to the point – we see that a lot where the interpretation is made by the Court, and then they might make reference. But that doesn't mean that there's some kind of deference there, either Skidmore or Chevron, does it? Well, Your Honor – But your point is that they called the appendix a regulation, and so that means we need to call – we need to treat the appendix as a regulation? The appendix is part of the regulation. But the appendix wasn't passed through notice and comment procedures the way the regulation itself was, right? I mean, so it seems like maybe our Court made a misstatement with vocabulary, but that doesn't mean all of a sudden this thing is a regulation. Well, Your Honor, I respectfully disagree. I think it's codified there. It's the same way the advisory committee notes to the Federal rules are relied on and are considered to be authoritative on the Federal rules. I believe that Gillstrap shows – and in fact, twice it called it a regulation and not commentary or guidance. It called it the regulation. And I think – Well, but the label is not so important as to what it is and how did it get there. Would you agree with that? That's fair. And so I'd like to turn to Mead. So really the question is, is it entitled to deference under Mead, right? So what Mead says is that you have to have two criteria. First, Congress has to have delegated authority to the agency. And we know that they did. That's 42 U.S.C. 12186b. Second, the agency interpretation claiming deference has to be promulgated in the exercise of that duty. That doesn't actually say that it has to be a regulation in principle. It just says the interpretation has to be promulgated in the exercise of its authority, meaning notice and comment rulemaking. And indeed, these comments were part of a two-step proposed – advanced proposed notice of rulemaking and then a final rule. And it was codified. So, okay, so even if we give you that, say we think that this is a regulation and or something that deserves deference, isn't it still the case that, as we were just talking about in the last argument, that what it says is that a public accommodations website – and so we still have this issue that maybe what that is is a bank that runs a website as opposed to an entity that is just a website? I think the comments are broader than that. And, in fact, it refers to some of its previous comments to sort of incorporate some of its statements over time. And certainly, if – as you mentioned, the statement of interest, the comments in the Hooks brief and so forth may be persuasive. I understand they're not entitled to Chevron deference, but those are persuasive. And I think that the commentary here is broad enough that it doesn't mean that it's just the websites of physical places. It actually says – But how do we know that reading it? I mean, it's – at least it's ambiguous what it means. And if it's ambiguous, how can we say it's clearly reconcilable with Weyer? Well, Your Honor, I don't think it's ambiguous. If it's ambiguous, then that's probably a problem. I think if it's ambiguous, one thing the Court could do is say, you know, in Weyer we interpreted it a certain way. We found that the statute was ambiguous. We interpreted it a certain way. We didn't find it was plain and clear. And now – so we have an ambiguous statute. But since Weyer, we've had a lot of commentary from the DOJ, right? And we now have an ambiguous commentary, and therefore, what do we do? And therefore, that commentary at least is persuasive under Skidmore. Now, granted, that doesn't necessarily allow this Court to overrule Weyer on this panel because it's persuasive. But I think an opinion saying that today, persuaded by the DOJ's commentary, we might find differently, at least gives us a chance to bring it up for in-bank review and, you know, let the panel face it and do it. But it's – And that's why, even if you're going to lose, you'd rather have us reach the merits than say that you waived it, am I understanding correctly? Because we have this issue about whether you've waived. You know, we've responded to that, and I'm happy to address that. I don't think – Sotomayor, just because I'm trying to figure out why you omitted, you know, your State law discrimination claims from your third amended complaint. We – the Court found that it was bound by Weyer, and there was only one operative fact, which is that Netflix is a website. So we couldn't have amended the complaint, couldn't have pled additional facts that would have entitled us or would have allowed us to state a claim under the current state of law. And that was really clear. And actually, if you look at the district court's opinion, everything it dismissed us against is, say, granted without prejudice, granted without prejudice, except for that section where it said that it's bound by Weyer. But you made – there's some express statements that you voluntarily abandoned those claims and that Netflix – Yes, Your Honor. That statement was in a fee application, in opposition to Netflix's fee application, which was filed a month after this appeal. But that only had to do with ADA-independent State law claims under the DPA. It didn't have to – it wasn't a statement about the Unruh Act, which still incorporates the ADA. It wasn't a statement about the ADA-independent claims. But the Court had already said you couldn't amend on the DPA claims based on the ADA. So the only thing you abandoned was the DPA claims based on something else. Right. And that's because we got the same – actually, similar rulings to Earl. I think it was the same court. You know, that we had to plead intentional discrimination. We had to show a higher standard. You know, we didn't feel that we could do that under Rule 11 and so forth. And so we elected not to pursue the ADA-independent claims. But clearly, the ADA-dependent claims had been dismissed as a matter of law. Right. And there was nothing we could have done. So I think my question earlier was actually confused. So your ADA claim, where you have to get around wire and want to seek en banc review, that is preserved. The only issue is whether the DPA claim is preserved or not. And that one is also based on the ADA. So do you need both, or is it okay that – do you need – Actually, we did not pursue an ADA claim in principle. We only did it under the DPA. So you do really need this. You need to not have waived this DPA claim based on the ADA. At least the ADA-dependent DPA claim. Why did you not pursue an ADA claim directly? Because the NAD came to us and said the law is better in the First Circuit. Will you please drop your ADA claim so that we're not subject to wire? And, you know, I'm glad they did, because look at the result, right? But, you know, I just want to finish on the final point that under Brand X, because if you find that the statute is ambiguous and you find that at least this regulation is entitled to Chevron deference, then under Brand X that supersedes wire. That's entirely clear. Thank you very much. Good morning. May it please the Court. David McDowell on behalf of Netflix. I'm not going to go back through the argument that was made by eBay, because I think it's right. They walked through the various steps this Court needed to do and did and where, and the question of Chevron deference. So I think the real question that's only left here is whether the claim was abandoned. Certainly the ADA claim was abandoned. They walked away from it. They made a choice. Well, they lost it on the merits. So the district court said as a matter of law, the DPA claim based on the ADA is foreclosed by wire. That section does not say you can amend. All the other sections say you can amend. Are you actually saying they could have tried again to plead the claim based on the ADA at that point? No. That claim, that sole claim, not that there's a DPA claim that's broader than the ADA, those claims were waived and walked away from. I do think — I think it's absolutely right, and I don't — I can't dispute that the Court did say the DPA claim based on a violation of the ADA. And so why don't — why isn't that a final decision on the merits of that claim that was dismissed with prejudice that therefore was done and is preserved for appeal? That question — that question is preserved. It's the other question that was also throughout the papers of the broader DPA independent claim. And so you're really just arguing that they can't try to have a DPA claim based on other State laws, the UNRRA Act or something else, because they waived that. That seems very clear. So if that's all you're arguing, that's — I didn't understand that from your brief. And I apologize for that. It was because it was unclear to us what claims were being asserted. What they're left with is a DPA claim hinged on Title III, on ADA. Yes. And we all agree that's here on appeal. But then there are some hurdles which may or may not be able to overcome because of waiver. Is that the sum of what we have? That's absolutely right. But so in your view, we should write something now that says they have this claim of the DPA based on the ADA, but it's foreclosed by wire. We can write a paragraph, and this case is done at least as a panel. That's what we should do. That's what you should do. If there are any other questions, I'm happy to address them. But the issues have been covered quite well. All right. Thank you. I would give you some rebuttal time, but I'm not sure there's much to rebut. I will give you a minute if you feel like there's something additional you need to tell us. I appreciate that, but I don't think so. All right. Thank you. Thank you both for your argument this morning. Cullen v. Netflix is submitted.
judges: McKeown, Murguia, Friedland